Filed 6/26/25  P. v. Valdez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083790 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS328446) |
| MIGUEL ENRIQUE VALDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Enrique Camarena, Alejandro Morales and Michael J. Popkins, Judges. Affirmed.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Following the denial of his motion to suppress evidence, defendant Miguel Enrique Valdez pleaded guilty to transporting a controlled substance (Health & Saf. Code, § 11352, subd. (a); count 2); and possession of a controlled substance for sale (*Id.*, § 11351; count 3). The court dismissed a charge of selling a controlled substance. (*Id.*, § 11352, subd. (a); count 1.) It sentenced Valdez to four years on count 2 and a concurrent term of 3 years on count 3, but suspended execution of the sentence pending his completion of probation and drug court.

Valdez contends the court erroneously denied his motion to suppress evidence under Penal Code section 1538.5. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At the preliminary hearing, a Chula Vista Police Department Officer testified he had been a law enforcement officer since 2016, and was trained and experienced in narcotics investigations. On October 21, 2023, he was patrolling in a marked car at a trolley station known for its high number of drug arrests. He noticed Valdez sitting in his vehicle, which was at the end of the parking lot with its door open, talking to a male bicyclist. Valdez and the bicyclist touched hands, and the officer believed Valdez gave something to the bicyclist. The bicyclist "looked around cautiously" to his left, right, and behind him, and left the area immediately. Valdez instantly closed his car door and drove away.

The officer believed he had observed a hand-to-hand narcotics sale, and therefore followed Valdez, who drove to a grocery store, picked up a passenger and left the shopping center. The officer saw through Valdez's rear window that a "significant" crack extended from the far left to the middle of Valdez's front windshield. The officer was concerned about Valdez's ability to see safely out of the front windshield; therefore, he stopped Valdez's

2

car based on both the crack and the potential hand-to-hand sale. He found illicit drugs and drug paraphernalia in the car.[1]

*Valdez's First Motion to Suppress Evidence*

Following the preliminary hearing, Valdez moved to suppress evidence of drug use and sale, arguing the police lacked reasonable suspicion or probable cause to detain him or search his car. The People argued in opposition that the officer lawfully stopped Valdez, and had probable cause and reasonable suspicion to search the vehicle and arrest Valdez based on the

---

[1]    Valdez challenges only the initial stop, and disclaims any challenge to the validity of the subsequent detention, arrest and search based on events that unfolded during the remainder of that police interaction. Specifically, Valdez did not have a driver's license, and he gave the officer a wrong name and date of birth. An officer then arrested Valdez for providing a false name. Other officers questioned the passenger, who said there was fentanyl and other narcotics in the car. She said Valdez had sold small quantities of narcotics on more than one occasion in order to sustain their habit of consuming approximately one to two grams of fentanyl and methamphetamine daily. In the vehicle officers found numerous glass pipes and materials suspected of being methamphetamine and LSD tablets. Valdez wore a fanny pack containing four baggies, one of which weighed over 20 grams and tested positive for fentanyl. The total amount of fentanyl recovered was more than a useable amount. Another bag tested positive for the drug diphenidine.

officer seeing what appeared to be a drug sale, and the cracked windshield, which likely violated Vehicle Code, section 26710.[2]

The court denied Valdez's motion: "[The officer] saw something that looked like a drug sale, couldn't say it was . . . and he didn't see anything change hands, which is why I'm going to dismiss count 1 because you do have to have proof that something was handed over or exchanged hands, not just that it appears that that happened. [¶] . . . [¶] Alternatively, [the officer] waited to see if he had anything more. There's a crack in the windshield. I mean, the evidence is sufficient to establish that he had reasonable suspicion to stop the vehicle based on a crack in the windshield . . . [Vehicle Code section] 26710 talks about a defective condition, [which] doesn't allow you to see. But the possibility that the crack did not impair the driver's view does not deprive the officer of the capacity to entertain that reasonable suspicion."

*Valdez's Second Motion To Suppress*

Valdez later renewed his motion to suppress evidence from the search, arguing the police lacked reasonable suspicion to believe he was engaged in criminal conduct. He also moved to dismiss the charges under Penal Code section 995.

The People in opposition argued Valdez had presented no new evidence, and therefore the court was bound by the magistrate's earlier denial of the

---

[2]     Vehicle Code section 26710 provides: "(a) It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear. [¶] . . . [¶] (c) In the event any windshield or rear window fails to comply with this code the officer making the inspection shall direct the driver to make the windshield and rear window conform to the requirements of this code within 48 hours. The officer may also arrest the driver and give them notice to appear and further require the driver or the owner of the vehicle to produce in court satisfactory evidence that the windshield or rear window has been made to conform to the requirements of this code."

4

suppression motion; moreover, no basis existed to dismiss the charges against Valdez. A different judge denied the motion.[3]

DISCUSSION

Valdez contends the magistrate and the trial court erroneously denied his motions to suppress evidence because police officers violated his Fourth Amendment rights by initiating a traffic stop, as no objectively reasonable suspicion of a hand-to-hand drug sale existed and further, no evidence showed that the cracked windshield impaired his vision.

I. *Applicable Law*

A defendant may move to suppress evidence under Penal Code section 1538.5 on grounds that a search without a warrant was unreasonable. The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. Warrantless searches are

---

[3] The court ruled: "[T]he testimony confirms that the officer observed the violation, the stop of the car was lawful. So here, evidence was presented to support both the stop [f]or a hand-to-hand transaction and for the cracked windshield. The officer observed an exchange of something, or, I believe, he observed contact between the two in the area. [¶] And something that hasn't been touched upon is the fact that this was an area known for high-narcotics activity. And when [the officer] sees these two people, based on his training and experience, he thought what he saw was an exchange. He didn't see an object exchange, but he saw the movements that indicated to him that an exchange took place. The person on the bike looked back and forth nervously, that in itself is reasonable suspicion to support a detention of Mr. Valdez."

The judge also found that the cracked windshield provided a valid basis for the police to stop Valdez: "So the cracked windshield looked as if it was big enough that he could see it from where he was behind the vehicle. It was seen through the back of the car window by the officer in his own car that it warranted at least a stop to see if it was safe. It could have also been a situation for it was not stable and could have caved in while driving. [¶] The bottom line is there's enough there for the officer to stop the vehicle and determine whether or not there's actually a Vehicle Code violation."

5

presumptively unreasonable, and the burden is on the prosecution to establish an applicable exception to the warrant requirement. (*People v. Simon* (2016) 1 Cal.5th 98, 120.)

Although the reasonableness of a search or seizure is normally tested by the probable cause standard expressly referenced in the Fourth Amendment, it is well established that circumstances short of probable cause may authorize a law enforcement officer to briefly detain an individual to confirm or dispel suspicions that the person is engaged in criminal activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 892; *Terry v. Ohio* (1968) 392 U.S. 1, 30.) Such a limited detention is proper when the officer knows of "specific and articulable facts causing him [or her] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*Tony C.*, at p. 893.) In making this decision, officers are entitled to rely on their unique training and experience. (*Ibid.*)

An individual is properly detained for a period of time "reasonably necessary" to conduct the investigation and discharge the duties associated with the reason for the detention. (*People v. McGaughran* (1979) 25 Cal.3d 577, 584; see also *Rodriguez v. United States* (2015) 575 U.S. 348, 350.)

On appeal, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) "Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, 'the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress,

6

drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.'" (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

## II. *Analysis*

We conclude the police officer's preliminary hearing testimony provides substantial evidence supporting the magistrate's finding that probable cause existed to detain Valdez. Specifically, the officer was experienced and well-trained in narcotics investigations, and he was working in a high drug crime area when he saw what he believed to be a hand-to-hand drug transfer between Valdez and the bicyclist. Afterward, the bicyclist looked around furtively before moving away immediately. On these facts alone, the officer's temporary detention was justified and permissible under Fourth Amendment jurisprudence set forth above.

Valdez argues: "Here, the evidence showed a hunch when all the officer could testify to was the bicyclist looking around, the touching of hands, and the bicyclist leaving after which Mr. Valdez left also. . . . [T]here was no evidence of a complete hand to hand transaction, no corroboration, a less likely location and time for a drug sale, particularly not with a marked squad car approaching. Also, . . . we have an officer who may not have been experienced or trained in hand-to-hand sales, and who did not stop the car based solely on this transaction. This is not the substantial evidence demonstrating the objectively reasonable suspicion required by the [Fourth A]mendment."

Valdez's arguments focus on offering alternative explanations for the evidence presented at the preliminary hearing. But as stated in one of the

cases Valdez relies on, "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. [Citation.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" (*People v. Butler* (2003) 111 Cal.App.4th 150, 160, quoting *United States v. Cortez* (1981) 449 U.S. 411, 417-418.) Under the applicable standard of review, we are required to defer to the magistrate's findings and apply our independent judgment as to the reasonableness of the search. Having done so, we conclude the evidence was substantial, and we are not persuaded by Valdez's proposed contrary interpretation of the evidence. The officer's expertise in narcotics investigations was significant, and although he did not specifically testify regarding his training in hand-to-hand narcotics sales, and although he did not see what, if anything, exactly was exchanged between the men, the officer still provided sufficient articulable evidence to provide a proper basis for stopping Valdez. Law enforcement officers may " 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]' " (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) Moreover, to remedy the absence of evidence of a completed sale, the court dismissed the drug sale charge.

A separate, proper basis for the traffic stop was the officer's observation of the large crack on Valdez's windshield, which caused him to reasonably conclude that condition was a possible defect that could impair Valdez's

ability to drive safely, thus violating Vehicle Code section 26710. Under subdivision (c) of that section, the officer was authorized to arrest Valdez if it found the windshield was defective. Accordingly, the officer had a proper basis to detain Valdez to investigate further, and he did so within the scope of the Fourth Amendment.

Valdez argues that photographs taken of the cracked windshield after the traffic stop "show clear windows with no significant obstructions. While not precise duplicates of what [the police officer] saw, they are, under the circumstances, reasonably close. The fact that the crack is not visible in every photo tends to show, that the crack was minor, perhaps only a scratch. For sure what they show, however, is that the crack did not obstruct the driver's view and that this was plain from every angle." Valdez ignores that in exercising our independent judgment, we do not consider each fact in isolation. Instead, " 'we must consider "the totality of the circumstances—the whole picture." ' " (*People v. Flores* (2024) 15 Cal.5th 1032, 1043.) If the detaining officer's justification for a traffic stop is based on a mistake—either factual *or* legal—then the resulting search or seizure is lawful under the Fourth Amendment as long as the officer's mistake is *objectively* reasonable. (*Heien v. North Carolina* (2014) 574 U.S. 54, 57, 60–61, 67.) "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " (*Id.* at pp. 60–61.)

We conclude substantial evidence supports the finding of " 'specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation' " (*People v. Hernandez, supra*, 45 Cal.4th at p. 299) that Valdez was engaged in a drug sale and driving in violation of the Vehicle Code. Accordingly, the officer's stop of his car did not

violate the Fourth Amendment, and the trial court did not err in denying the motion to suppress.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

KELETY, J.